IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

FILED
October 12, 2005

CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| JAMES A. BRYANT, AS NEXT FRIEND OF BOBBY JAMES LEE BRYANT, A MINOR; SYBIL SANCHEZ, TEMPORARY ADMINISTRATRIX OF THE ESTATE OF AMANDA BRYANT, DECEASED; SYBIL SANCHEZ, INDIVIDUALLY; BOB LEMMONS & LLOYD LIZAKOWSKI | § § § § § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | **Civil Action No. 7:04-CV-114-R** |
| GIACOMINI, S.p.A., | § § | |
| *Defendant.* | § § | |

MEMORANDUM OPINION AND ORDER

Now before the Court are:

(1) Defendant Giacomini's Motion for Summary Judgment with supporting brief, Plaintiffs'

response, and Defendant's reply, filed August 22, 2005; and

(2) Plaintiff Bryant's, et al., Motion for Partial Summary Judgment with supporting brief,

Defendant's response, and Plaintiffs' reply, filed August 26, 2005.

After a thorough review of all parties' submissions, all matters of record, and all

applicable law, Plaintiffs' Motion for Summary Judgment is **DENIED**, and Defendant's Motion

for Summary Judgment is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

On the morning of June 17, 2002, Plaintiffs Amanda Bryant, Bobby James Lee Bryant (a minor), and Lloyd Lizakowski ("Plaintiffs") were inside their trailer home in Bowie, Montague County, Texas when it caught fire.

Plaintiffs allege that at some time prior to the fire, they had removed a space heater from the trailer.  The propane gas supply for the heater was left connected to the trailer, but was cut off from the residence by a gas valve.  Plaintiffs allege that Bobby James Lee Bryant, a four-year old at the time of the accident, turned the valve on.  Propane gas spread throughout the trailer and was ignited when Amanda Bryant ignited a cigarette lighter.  Plaintiffs suffered burn injuries from the fire, and Amanda Bryant eventually died from her injuries.

On June 14, 2004, Plaintiffs filed their complaint against Giacomini ("Defendant"), the manufacturer of the valve at issue, in federal court on the basis of diversity jurisdiction.  They sought compensatory and incidental damages on the basis of product liability, including defective design, manufacturing defect, and defective marketing, both in strict liability and negligence.  Plaintiff further alleges that Defendant breached a post-sale duty to warn and recall on the defective and unreasonably dangerous condition of the valve.

On July 25, 2005, Giacomini moved for summary judgment seeking dismissal on all of Plaintiffs' claims.  It argues that there is no evidence to support claims for any theory of product liability under Texas law, or claims for breach of post-sale duty to warn or express or implied warranty.  Plaintiffs cross-filed on August 29, 2005, seeking partial summary judgment only on the product liability issues of their case.

## II. ANALYSIS

Defendants in this case request summary judgment on the issues of manufacturing defect, design defect, marketing defect, post-sale duty to warn, and express and implied warranty.  Plaintiffs request summary judgment solely on their strict liability and negligence theories of defective design.

### A.      Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affadvits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  An issue is material if it involves a fact that might affect the outcome of a suit under governing law.  *See Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). The court must decide all reasonable doubts and inferences in the light most favorable to the non-moving party, *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir. 1994).  As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion must be denied.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the non-moving party bears the burden of proof on a claim upon which summary judgment is sought, the moving

party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. Once the moving party has satisfied this burden, the non-moving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *Celotex*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

The court must inquire as to whether there is sufficient evidence upon which reasonable jurors could properly find by a preponderance of the evidence that plaintiff is entitled to a verdict. *Anderson*, 477 U.S. at 249-50. In other words, summary judgment will be granted "against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A "sufficient showing" consists of more than a scintilla of evidence in support of the moving party's position. *Anderson*, 477 U.S. at 249-50; *Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 860 (5th Cir. 1986) (stating that "conjecture alone" was insufficient to raise an issue as to existence of an essential element).

**B. Products Liability**

Products liability claims in Texas fall into three categories: design defect, manufacturing defect, and marketing (or warning) defect. RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2 (stating, in relevant part, "[a] product is defective when, at the time of sale, it contains a manufacturing defect, is defective in design, or is defective because of inadequate instructions or warnings. . ."); *American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 426 & n.1 (Tex. 1997); *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex. 1995); *Technical Chem.*

*Co. v. Jacobs*, 480 S.W.2d 602, 604-05 (Tex. 1972).  Plaintiffs are suing under all three theories and the Defendant seeks summary judgment on all three.  Plaintiffs seek summary judgment solely on the issue of defective design.[1]

**1. Manufacturing Defect**

Under Texas law, a manufacturing defect claim requires the deviation of a finished product, in terms of its construction or quality, from the specification or planned output in a manner that renders it unreasonably dangerous.  *See Grinnell,* 951 S.W.2d at 433.

A plaintiff claiming a manufacturing defect must prove three elements: (1) that the product did not conform to the manufacturer's plans and specifications; (2) the nonconformance made the product unreasonably dangerous; and (3) the defect was the cause of the injuries for which conformance was sought.  *Grinnell*, 951 S.W.2d at 434.

The moving party in a summary judgment motion must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden.  *Celotex*, 477 U.S. at 327.  Defendant argues that Plaintiffs did not produce evidence as to any of the elements required to prove a manufacturing defect.  At no point in the material of record do Plaintiffs provide evidence identifying the manufacturer's plans for the valve at issue, nor do they point to the existence of a nonconformance with the plan that made the valve unreasonably dangerous.  In fact, Plaintiffs do not even respond to Defendant's assertion on this issue in their Response to Defendant's Motion for Summary Judgment.

---

[1] As a preliminary matter, parties do not seem to contest the causal link between the valve at issue and the fire.  In other words, there is no dispute apparent from parties' Motions that gas leaking from the Giacomini valve caused the trailer fire. Thus, this Court will not discuss causation here.

Plaintiffs have not met their burden of production on summary judgment for a manufacturing defect claim, leaving no genuine issue of material fact for the jury. Defendants are therefore entitled to judgment as a matter of law on this issue.

**2. Design Defect**

Plaintiffs' primary claim is that Defendants are liable under theories of negligence and strict liability based on the defective design of the valve at issue. In Texas, product liability claims for design defects are analyzed under § 402A of the Restatement (Second) of Torts and the Texas Civil Practice & Remedy Code § 82.005. *Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 236 (5th Cir. 2003).

Section 402A of the Restatement (Second) of Torts states in relevant part:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm caused to the ultimate user, consumer or his progeny, if

(a) the seller is engaged in the business of selling such a product;

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

RESTATEMENT (SECOND) OF TORTS § 402A.

Under Texas law, "[a] plaintiff must prove that there is a safer alternative design in order to recover under a design defect theory." *Flock*, 319 F.3d at 236; *General Motors Corp. v. Sanchez*, 997 S.W.2d 584, 588 (Tex. 1999) (quoting *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 384 (Tex. 1995)). To establish a design defect in Texas, Section 82.005 of the Texas Civil Practice and Remedies Code requires a claimant "to prove by a preponderance of the evidence

that: (1) there was a safe alternative design; and (2) the defect was a producing cause of the personal injury, property damage, or death for which the claimant seeks recovery." TEX. CIV. PRAC. & REM. CODE ANN. § 82.005(a).

**a. Alternative Design**

Giacomini contends that it is entitled to judgment as a matter of law because Plaintiffs present no evidence that there was a safer alternative design. TEX. CIV. PRAC. & REM. CODE ANN. § 82.005(a).

The alternative design requirement set forth by § 82.005 "applies to all products liability actions. . ." *Smith*, 237 F.3d at 520. Tex. Civ. Prac. & Rem. Code Ann. § 82.005 defines "safer alternative design," stating:

(b) In this section, "safer alternative design" means a product design other than the one actually used that in reasonable probability:

(1) would have prevented or significantly reduced the risk of the claimant's personal injury, property damage, or death without substantially impairing the product's utility; and

(2) was economically and technologically feasible at the time the product left control of the manufacturer or seller by the application of existing or reasonably achievable scientific knowledge.

TEX. CIV. PRAC. & REM. CODE ANN. § 82.005(a); *Smith v. Louisville Ladder Co.*, 237 F.3d 515, 518 (5th Cir. 2001); *General Motors Corp. v. Sanchez*, 997 S.W.2d 584, 588 (Tex. 1999) (stating that a safer alternative design is one that both "reduce[s] the risk of injury and [is] both economically and technologically feasible.") .

Defendants argue that the only evidence Plaintiffs rely on is the expert testimony of Dr. Richard.  A magistrate court struck most of Forbes' testimony on *Daubert* grounds.  *Bryant v. Giacomini*, No. 7:04-CV-114 (filed Sept. 15, 2005).  As a result, Forbes would only be permitted to opine at trial that on valves similar to the Giacomini valve, a square-knobbed valve would be more difficult to open than a levered valve.  *Bryant v. Giacomini*, No. 7:04-CV-114 (filed Sept. 15, 2005).  Although Forbes is in excellent company on this opinion,[2] this assertion by itself would not be enough for Plaintiffs to meet the burden for summary judgment.

Plaintiffs, however, do provide safer alternative designs to the valve at issue.  They provide examples of design technology that could potentially be applied to the subject valve.  Specifically, they list: a flat sqaure handle; a lockable handle; a cap and chain meant to cap the valve when not in use; and an alternate locking device meant to prevent the accidental opening of valves.  All of these designs are manufacturered by Giacomini and available for sale.  The Defendant's expert, Dr. Stephen Winder, conceded at deposition that a lockable handle would have made the lever more difficult to turn.  He similarly testified that the locking device sold by Giacomini to place over some valves in their product line could also work on the subject valve.  He also conceded that the caps and chains already manufactured by Giacomini could have been applied to flared fittings like those of the valve at issue.  He acknowledged that the cap-and-chain safety device techonology could be applied to the subject valve.

Plaintiff did not produce any experts to testify on the ability of a four-year old child to turn the valve at issue, an alternately designed lever, or a lever equipped with a safety

---

[2] "Give me a place to stand on, and I will move the Earth." E.J. DJKSTERHUIS, ARCHIMEDES 15 (translated from the Dutch by C. Dikshoorn) (Princeton University Press 1987) (quoting Archimedes on levers).

mechanism.  But Defendant's chief engineer, Silvorio Gioria, testified at deposition that it would take less than ten foot (inch pounds) to turn the subject valve.  A jury does necessarily need an expert to ascertain the relative strength of a four-year old child, or to conclude that red (the color of the subject valve) is a color that is attractive to children.

Further, Giacomini may contest the practical use of the mechanisms suggested by Plaintiffs.  For example, Winder asserted that a lockable handle would also make it harder to close.  But there are numerous other designs and safety mechanisms provided by the Plaintiffs that may not present the same problem - if, indeed, that is a problem.  Ultimately, those are calls for the factfinder to discern.  By providing alternate designs that Defendant's own experts admit would have reduced the possibility of an inadvertent opening, Plaintiffs provided evidence that is sufficient to allow a jury to reasonably conclude the existence of a safer alternative design that was economically and technologically feasible for Giacomini to manufacture.

Plaintiffs have met their burden of production on summary judgment.  Questions of fact remain as to whether "a safer alternative design" existed that would have reduced the risk of injury to the Plaintiff's and was technologically and economically feasible for the Defendant to manufacture.  The questions of fact preclude summary judgment on this issue.

**b. Producing Cause**

Defendant argues that even if the valve was defective, it was not the producing cause of the personal injury.  As stated above, producing cause is a statutorily required element for a product liability case in Texas.  TEX. CIV. PRAC. & REM. CODE § 82.005(a)(2).  "A producing cause is 'an efficient, exciting, or contributing cause, which in a natural sequence, produced injuries [at issue].'"  *Flock*, 319 F.3d at 238 (quoting *G.M.C. v. Harper*, 61 S.W.3d 118, 130

(Tex. App. Eastland 2001)).

Pointing to the Forbes' admission that had the valve been installed per applicable codes by Thermagas (the entity that connected the gas to the trailer), the accident would not have occurred, Defendants seem to propose an intervening cause argument.  They assert that Thermagas broke the causal link between the valve's design and the injuries claimed. Defendant argues that the negligence of Thermagas would have caused the accident regardless of any defect in the valve.

Producing cause in this context, however, means cause-in-fact of the harm.  A defendant's conduct "must have been a substantial factor in bringing about the injury and. . . the injury would not have occurred but for the defendant's conduct."  *Id.*  As shown above, Plaintiffs have produced evidence from which a jury could infer that had an safer alternative design existed that would have prevented the leak, regardless of faulty installation.  Plaintiffs suggest that a square or lockable handle might have prevented the inadvertant turning of the valve.  In the alternative, a cap attached by a chain or a handle locking device might have guarded against accidental turning. Because issues of fact are presented, summary judgment is inappropriate on this issue.

**c. Unreasonable Danger**

Defendant argues that the valve at issue was not unreasonably dangerous under a risk-utility analysis merely because it could be inadvertently opened, by a four-year old or otherwise.

A design defect claimant must not only meet the proof requirements of § 82.005, but must also show, "under common law, that the product was defectively designed so as to be

unreasonably dangerous, taking into consideration the utility of the product and the risk involved in its use." *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 254-56, 258 (Tex. 1967); *accord Allen v. W.A. Virnau & Sons, Inc.*, 28 S.W.3d 226, 232 (Tex. App. - Beaumont 2000, pet. denied). The risk-utility analysis incorporates the following factors:

> (1) the utility of the product to the user and to the public as a whole weighed against the gravity and likelihood of injury from its use;
>
> (2) the availability of a substitute product which would meet the same need and not be unsafe or unreasonably expensive;
>
> (3) the manufacturer's ability to eliminate the unsafe character of the product without seriously impairing its usefulness or significantly increasing its costs;
>
> (4) the user's anticipated awareness of the dangers inherent in the product and their avoidability because of the general public knowledge of the obvious condition of the product, or the existence of suitable warnings or instructions; and
>
> (5) the expectations of the ordinary consumer."

*Hernandez*, 2 S.W.2d at 256 (quoting *Grinnell*, 951 S.W.2d at 432).

Texas courts have recognized the risk of adult products without safety features coming into a child's hands. *See, e.g., Hernandez*, 2 S.W.2d at 254 (maintaining a case involving a fire started by a young child using a cigarette lighter without child resistant features); *see also Flock*, 319 F.3d at 241 (asserting that the relevant inquiry in the risk-utility analysis includes "assessing the risk that an adult will allow a child access [to a cigarette lighter] and the gravity of the harm resulting therefrom."). "The risk of child play is subsumed in the risk of adult use and is clearly relevant to the risk-utility analysis." *Flock*, 319 F.3d at 341. In this case, that risk

of child play stemming from an uncapped gas valve that emits propane into a home must be balanced against consumer preference for a valve that is easy to turn on and off.

Plaintiffs have provided evidence to support the first three factors of the risk-utility analysis. There is an obvious risk that a child may injure himself or others while playing with an indoor uncapped gas valve. *Hernandez*, 2 S.W.3d at 261 ("The obviousness of the risk of harm and the inherent nature of danger are. . . important factors to be considered in determining whether a product is unreasonably dangerous, and in a given case, they may be conclusive of that issue."). As shown above, Plaintiffs have produced evidence showing the availability of substitute products that would not be unsafe or unreasonably expensive, as well as the manufacturer's ability to eliminate the product's unsafe character without eliminating its usefulness.

The Texas Supreme Court has stated that one factor in the risk-utility analysis should not be considered alone, but taken as a whole. *Hernandez*, 2 S.W.3d at 259. In other words, a factor is "only 'ultimately determinative' as a matter of law if 'reasonable minds cannot differ on the risk-utility analysis considerations." *Id.* at 261; *see also Robins v. Kroger Co.*, 80 S.W.3d 641, 644-45 (Tex.App.--Houston [1st Dist. 2002] pet. filed) (stating that no single factor is determinative in the risk-utility analysis). Even though Plaintiff does not provide evidence as to factors four and five in the risk-utility analysis, fact issues still exist as to factors one, two, and three, and therefore, the analysis considerations taken as a whole. Reasonable minds could still differ on the outcome of the balancing test. Defendants are not entitled to summary judgment on this issue.

**3. Marketing Defect**

In a marketing defect ("failure-to-warn") case, the claimant must show that the warning was defective, and that the defect was the producing cause of the injury. *General Motors v. Saenz*, 873 S.W.2d 353, 359 (Tex. 1993). A marketing defect exists if the lack of adequate warnings or instructions renders a product unreasonably dangerous. *Smith v. Aqua-Flo, Inc.*, 23 S.W.3d 473, 480 (Tex.App.-Houston[1st Dist.] 2000, pet. denied). They duty to warn applies to manufacturers as well as suppliers. *Aluminum Co. of Am. v. Alm*, 785 S.W.2d 137, 139 (Tex. 1990). Generally, a manufacturer has a duty to warn if it knows or has reason to know of its product's potential harm to a user. *Bristol-Myers Co. v. Gonzalez*, 561 S.W.2d 801, 804 (Tex. 1978). The manufacturer's duty extends beyond the purchaser to the ultimate user. *Lopez v. Aro Corp.*, 584 S.W.2d 333, 334 (Tex. Civ. App.-San Antonio 1979, writ ref'd n.r.e.).

Plaintiffs have failed to proffer any evidence on this claim. They do not offer or point to any evidence of lack of warnings or inadequacy of warnings. They fail to show how lack of adequate warnings may have rendered the valve at issue unreasonably dangerous. Their sole expert denies having any opinion concerning the warnings or lack thereof in this matter, despite his expressed beliefs that he is qualified to do so. There is simply no evidence on record to support the elements of this claim, and for this reason, Defendant is entitled to summary judgment.

## C. Post-Sale Duty to Warn

Under Texas products liability law, a manufacturer has no duty to warn about a product after it has been manufactured and sold. *McClennan v. Eurocopter Corp. Inc.,* 245 F.3d 403, 430 (5th Cir. 2001). Instead, a manufacturer's duty to warn is determined at the time the product leaves the manufacturer. *Syrie v. Knoll Intl.*, 748 F.2d 304, 311 (5th Cir. 1984);

*General Motors Corp. v. Saenz*, 873 S.W.2d 353, 356 (Tex. 1993).

There are two possible exceptions to this general rule.  The first exception is where the manufacturer regains some significant control over the product.  *Syrie v. Knoll Intl.*, 748 F.2d 304, 311 (5th Cir. 1984) (applying Texas law).  The second is where a manufacturer assumed a post-sale duty and then did not use reasonable means to discharge that duty.  *Dion v. Ford Motor Co.*, 804 S.W.2d 302, 310 (Tex.App.-Eastland, 1991, writ denied).  In that instance, it must also be established that the plaintiff's injury was a proximate result of the breach of that assumed duty.  *Id.* at 309.

Plaintiffs provide no evidence that Giacomini ever regained control of the valve at issue, or that they ever assumed post-sale duties regarding the valve.  They do not address this issue in their Response, nor is this evidence apparent or present in the material on record. Accordingly, Defendants are entitled to summary judgment on this issue.

## D. Warranty

Defendants move for summary judgment on Plaintiffs' express and implied warranty claims.  To recover for the breach of an express warranty under Texas law, a plaintiff must show that a seller made a representation or promise "which relates to the goods and becomes part of the basis of the bargain. . ."  TEX. BUS. & COM. CODE § 2.313. Here, Plaintiff fails to offer evidence of representations that may be construed as explicit warranties by Giacomini. They do not identify the warranty, nor do they point to any place in the record where the warranty may be located.  There is also no policy or contract provided on record where a warranty may be located.  As there is no evidence that Giacomini made an express promise that could be breached, Defendant is entitled to summary judgment on this issue.

To recover for a breach of implied warranty of fitness for a particular purpose, the seller must have reason to know at the time of contracting: (1) any particular purpose for which the goods are required and (2) that the buyer is relying on the seller's judgment to select suitable goods for that purpose.  TEX. BUS. & COM. CODE § 2.315.  Again, Plaintiff offers no evidence to support either of these elements on record, nor does it do so in its response to Defendant's motion.  For the above reasons, Defendant is entitled to summary judgment on Plaintiffs' warranty causes of action.

## CONCLUSION

For the reasons stated above, both Plaintiff's Motion for Summary Judgment (filed Aug. 29, 2005) and Defendant's Motion for Summary Judgment (filed Aug. 22, 2005) on the issue of design defect are DENIED.  The Defendant's Motion for Summary Judgment on all issues other than defective design is GRANTED.

**It is so ORDERED.**
**ENTERED**: October 12, 2005.

_____
**JERRY BUCHMEYER,**
**SENIOR U.S. DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**